**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Case No. 11-25861-TAB |
|  | ) | Chapter 7 |
| LAKESHORE MOTORCARS, INC., | ) |  |
|  | ) | Hon. Timothy A. Barnes |
| Debtor. | ) |  |
|  | ) | Hearing Date:  November 30, 2016 |
|  | ) | Hearing Time:  10:30 a.m. |

**COVER SHEET FOR SECOND AND FINAL APPLICATION OF
SEYFARTH SHAW LLP FOR COMPENSATION AND REIMBURSEMENT
OF EXPENSES AS COUNSEL TO CHAPTER 7 TRUSTEE GUS A. PALOIAN
FOR THE PERIOD OF JULY 31, 2013 THROUGH CLOSE OF CASE**

| | |
|---|---|
| Name of Applicant: | Seyfarth Shaw LLP |
| Authorized to Provide Professional Services to: | Chapter 7 Trustee Gus A. Paloian |
| Date of Appointment: | September 7, 2011, retroactive to August 10, 2011 |
| Period for which Compensation and Reimbursement is Sought: | July 31, 2013 through close of case |
| Amount of Second and Final Compensation Sought: | $40,144.50 |
| Amount of Second and Final Expense Reimbursement Sought: | $   166.30 |
| Amount of Final Compensation Sought: | $130,232.00 |
| Amount of Final Expense Reimbursement Sought: | $  1,645.31 |

This is an:   _____   Final   _X_   Second and Final Application.

Prior Applications:

| SEYFARTH'S PRIOR INTERIM FEE APPLICATIONS IN CHAPTER 7 CASE | | | | | | |
|---|---|---|---|---|---|---|
| Interim App. | Filing Date & Docket Number(s) | Interim Period Covered | Total Fees Requested & [Allowed] | Total Expenses Requested & [Allowed] | Aggregate Allowed Fees & Expenses | Fees & Expenses Paid to Date |
| 1st | 08/29/13 [32] | 8/10/11-7/31/13 | $90,087.50 [$90,087.50] | $1,479.01 [$1,479.01] | $91,566.51 | $91,566.51 |
|  |  |  |  | **TOTAL** | **$91,566.51** | **$91,566.51** |

Dated:  October 31, 2016

Respectfully submitted,

GUS A. PALOIAN, not individually or personally, but solely in his capacity as the Chapter 7 Trustee of the Debtor's Estate,

By:/s/ Bret M. Harper
    Gus A. Paloian (06188186)
    Bret M. Harper (6299968)
    SEYFARTH SHAW LLP
    131 South Dearborn Street, Suite 2400
    Chicago, Illinois 60603
    Telephone:  (312) 460-5000
    Facsimile:  (312) 460-7000
    *Counsel to Chapter 7 Trustee,*
    *Gus A. Paloian*

27539095v.1

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 11-25861-TAB |
| | ) | Chapter 7 |
| LAKESHORE MOTORCARS, INC., | ) | |
| | ) | Hon. Timothy A. Barnes |
| Debtor. | ) | |
| | ) | Hearing Date: November 30, 2016 |
| | ) | Hearing Time: 10:30 a.m. |

### SECOND AND FINAL APPLICATION OF SEYFARTH SHAW LLP FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES AS COUNSEL TO CHAPTER 7 TRUSTEE GUS A. PALOIAN FOR THE PERIOD FROM JULY 31, 2013 THROUGH CLOSE OF CASE

Pursuant to Sections 105(a), 330, and 331 of title 11 of the United States Code (the "Bankruptcy Code"), Seyfarth Shaw LLP ("Seyfarth"), as counsel to Gus A. Paloian, not individually or personally, but solely in his capacity as the duly-appointed Chapter 7 trustee (the "Trustee") of the bankruptcy estate (the "Estate") of Lakeshore Motorcars, Inc. (the "Debtor"), hereby submits its Second and Final Application for Compensation and Reimbursement of Expenses (the "Application") for legal services performed, and expenses incurred, during the period of July 31, 2013 through close of case (the "Application Period"). In support of this Application, Seyfarth respectfully represents as follows:

### I. INTRODUCTION

1. Seyfarth makes this Application pursuant to: (a) sections 105(a), 330, and 331 of the Bankruptcy Code; (b) Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); (c) applicable provisions of the Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330, adopted by the Office of the United States Trustee (the "Guidelines"); (d) Rule 5082-1 of the Bankruptcy Court's Local Rules; (e) that certain Order of the Court entered on September 7, 2011, in the

above-captioned case (the "Case") authorizing Seyfarth's retention as counsel to the Trustee

retroactive to August 9, 2011 ("Seyfarth Retention Order"); and (f) applicable case law.

2.    Seyfarth respectfully seeks an Order of this Court awarding payment from the

Estate of: (a) second and final allowance of compensation in the amount of $40,144.50 for

professional services rendered by Seyfarth on behalf of the Trustee during the Application

Period; and (b) second and final reimbursement of actual and necessary expenses in the amount

of $166.30 incurred by Seyfarth in rendering such professional services to the Trustee during

the Application Period.

## II.  JURISDICTION AND STATUTORY PREDICATES

3.    This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157 and

1334 and Internal Operating Procedure 15(a) of the United States District Court for the

Northern District of Illinois.  Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and

1409. Consideration of this Application is a core proceeding pursuant to 28 U.S.C.

§§ 157(b)(2)(A), (B), and (O).

## III.  BACKGROUND

4.    On June 21, 2011 petitioning creditor Gus A. Paloian, Chapter 7 Trustee of

Canopy Financial, Inc., caused an involuntary petition for relief under Chapter 7 of the United

States Bankruptcy Code to be filed with the Court.

5.    On August 9, 2011, an order for relief was entered with the Court.

6.    On August 10, 2011, Gus A. Paloian was appointed as Chapter 7 Trustee in the

Case.

7.    In accordance with section 504(b)(1) of the Bankruptcy Code and Bankruptcy

Rule 2016, Seyfarth has received no promises for payment for services rendered or to be

rendered in any capacity whatsoever in connection with the Case, other than specifically

provided for in the Seyfarth Retention Order.  Additionally, other than as permitted by section

2

504(b)(1) of the Bankruptcy Code and Bankruptcy Rule 2016(a), no agreement or understanding exists between Seyfarth and any other entity for a division of compensation and reimbursement received or to be received for services rendered in or in connection with the Case.

## IV.  SUMMARY OF SERVICES RENDERED, AND EXPENSES INCURRED, BY SEYFARTH

### A.  Overview

8.      This Application is the second and final fee application for compensation and expense reimbursement that Seyfarth has filed in this Case.

9.      On August 29, 2013, Seyfarth filed its First Interim Fee Application requesting $90,087.50 for legal services rendered, and reimbursement of expenses in the amount of $1,479.01.  On September 24, 2013, the Court awarded Seyfarth fees in the amount of $90,087.50 and reimbursement of expenses in the amount of $1,479.01.

10.      During the Application Period, Seyfarth: (a) provided legal services to the Trustee in the amount of $39,644.50 the "Fees"), and (b) advanced costs in the amount of $166.30 (the "Expenses") in connection with the legal services that it provided to the Trustee.

11.      In addition to the actual services performed to date, Seyfarth estimates that an additional three (3) hours will be expended in order to close the case, resulting in additional fees and expenses of $500.00.

12.      The services provided by Seyfarth during the Application Period include: (a) investigating fraudulent transfers of assets by Lakeshore Motorcars, Inc. to Bill Loumbardias, Emmanuel "Manny" Rigatos, and Island Enterprises M & P, Inc., d/b/a We Wash III ; (b) reviewing and analyzing document production; (c) reviewing and resolving the Estate claims filed in the Case, consisting of five claims totaling $ 2,204,658.41, and (d) negotiating

3

additional settlement of the Adversary Proceeding for a total final settlement obligation of

$78,748.00.

    13.   The total recovery of settlement payments (including judgment interest) is

$331,364.32.

    14.   The following table consists of a breakdown of the amount of Fees incurred by

each Seyfarth professional, including each such professional's title, hourly rate, total hours

expended in providing legal services in the Case, and the value attributable to such legal

services:

| PROFESSIONAL | TITLE | 2011-2016 HOURLY RATES | TOTAL HOURS | VALUE |
|---|---|---|---|---|
| Gus A. Paloian | Partner | 2011 $575.00<br>2012 $600.00<br>2013 $625.00<br>2014 $650.00<br>2015 $685.00<br>2016 $695.00 | 29.20 | $18,518.50 |
| James B. Sowka | Partner | 2011 $375.00<br>2013 $405.00 | 2.70 | $1,063.00 |
| Christopher J. Harney | Associate | 2014 $375.00<br>2015 $385.00 | 8.10 | $3,041.50 |
| Bret M. Harper | Associate | 2015 $330.00<br>2016 $355.00 | 14.70 | $5,191.00 |
| Jennifer M. McManus | Paralegal | 2012 $255.00<br>2013 $270.00<br>2014 $285.00<br>2015 $300.00<br>2016 $315.00 | 36.30 | $10,645.50 |
| Alice Shepro | Former Case Assistant | 2011 $85.00 | 6.30 | $535.50 |
| Julie Ziegler | Case Assistant | 2014 $95.00<br>2016 $105.00 | 6.20 | $649.50 |

27539095v.1

| PROFESSIONAL | TITLE | 2011-2016 HOURLY RATES | TOTAL HOURS | VALUE |
|---|---|---|---|---|
| TOTAL: | | | 103.50 | $39,644.50 |

15.   Biographies for the attorneys listed above who performed the bulk of the services in this matter during the Application Period were previously submitted to the Court as part of the First Application [see Dkt. No. 32 at Exhibit 1].

16.   During the Application Period, Seyfarth made every reasonable effort to have services that it rendered to the Trustee performed by those qualified professionals charging the lowest hourly rates consistent with the level of service, experience, and efficiency required of a given task.

17.   All of the compensation for which Seyfarth requests allowance and payment, and all of the expenses for which Seyfarth requests reimbursement, in this Application relate to the discharge of Seyfarth's services, as requested by the Trustee, during the Application Period, plus an additional $500.00 in fees and expenses in order to close the case.

18.   Seyfarth respectfully submits that its services rendered to the Trustee and expenses incurred during the Application Period have, in all respects, been reasonable, necessary, and beneficial to the Estate, as further discussed herein.

19.   Seyfarth further submits that the total fees sought herein, for services rendered during the Application Period, have been voluntarily reduced in the aggregate amount of $4,144.50.

### B.   Time and Expense Records

20.   Seyfarth maintains written records of the time expended by its professionals. These time records are maintained: (a) contemporaneously with the rendition of services by

27539095v.1

each Seyfarth professional, and (b) separately from those of the Trustee, in accordance with procedures established within this District.

21.    Such records for the Case, copies of which are grouped and attached hereto as **Exhibit 1** and which are incorporated herein by reference, set forth in detail: (a) the services which Seyfarth rendered on behalf of the Trustee, (b) the dates upon which such services were rendered, (c) the amount of time spent on the services in one-tenth of one hour increments, and (d) the identity of each Seyfarth professional who performed such services.

22.    Seyfarth also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with rendering services to the Trustee.  A complete listing of the Expenses and the amounts for which reimbursement is sought are attached hereto as **Exhibit 2** and incorporated herein by reference.

## C.  Breakdown of Fees by Category of Services Rendered

23.    For the Court's convenience, Seyfarth has categorized its services to the Trustee during the Application Period into five (5) categories, as follows: (a) Case Administration; (b) Claims Administration and Analysis; (c) Investigation of Estate Claims/Adversary Proceedings/Litigation; (d) Fee Applications; and (e) Other Professional Fee Applications.

### CASE ADMINISTRATION (6.40 HOURS VALUED AT $2,110.00)

24.     During the Application Period, Seyfarth expended 6.40 hours, worth a value of $2,110.00 on behalf of the Trustee on matters of Case Administration, including:

A.    Conferences and/or, teleconferences regarding assets and liabilities of the Estate, case status and case strategy;

B.    Communicating with professionals, and other parties-in-interest regarding case status, processes, procedures and effects of the bankruptcy proceedings; and

C.    Reviewing and analyzing pleadings filed in the case.

6

25.     During the preparation of this Application, Seyfarth discovered that it inadvertently excluded eight (8) time entries for the period October 19, 2011 through June 14, 2013 from its first interim fee application.  Seyfarth has included the omitted time entries in this Application.

26.     A breakdown of the professionals providing services in this category is as follows:

| PROFESSIONAL | TITLE | HOURLY RATES | TOTAL HOURS | VALUE |
|---|---|---|---|---|
| Gus A. Paloian | Partner | 2012 $600.00<br>2016 $695.00 | .40 | $259.00 |
| James B. Sowka | Partner | 2011 $375.00 | 1.10 | $412.50 |
| Bret M. Harper | Associate | 2015 $330.00 | 1.10 | $363.00 |
| Jennifer M. McManus | Paralegal | 2012 $255.00<br>2013 $270.00<br>2015 $300.00 | 3.80 | $1,075.50 |
| **TOTAL:** | | | **6.40** | **$2,110.00** |

### CLAIMS ADMINISTRATION AND ANALYSIS (27.20 HOURS VALUED AT $12,304.50)

27.     During the Application Period, Seyfarth expended 27.20 hours, worth a value of $12,304.50, on behalf of the Trustee reviewing, analyzing and objecting to claims filed against the Estate.

28.     A breakdown of the professionals providing services in this category is as follows:

| PROFESSIONAL | TITLE | HOURLY RATES | TOTAL HOURS | VALUE |
|---|---|---|---|---|
| Gus A. Paloian | Partner | 2014 $650.00<br>2015 $685.00 | 10.20 | $6,703.00 |

7

27539095v.1

| PROFESSIONAL | TITLE | HOURLY RATES | TOTAL HOURS | VALUE |
|---|---|---|---|---|
| | | 2016 $695.00 | | |
| James B. Sowka | Partner | 2013 $405.00 | .10 | $43.00 |
| Christopher J. Harney | Associate | 2014 $375.00<br>2015 $385.00 | 8.10 | $3,041.50 |
| Jennifer M. McManus | Paralegal | 2013 $270.00<br>2014 $285.00<br>2015 $300.00<br>2016 $315.00 | 8.50 | $2,487.00 |
| Julie Ziegler | Case Assistant | 2014 $95.00 | .30 | $30.00 |
| **TOTAL:** | | | **27.20** | **$12,304.50** |

### INVESTIGATION OF ESTATE CLAIMS/ADVERSARY PROCEEDINGS/LITIGATION
### (39.40 HOURS VALUED AT $16,899.50)

29.    During the Application Period, Seyfarth expended 39.40 hours, with a value of

$16,899.50 on behalf of the Trustee in matters related to Investigation of Estate

Claims/Adversary Proceedings/Litigation, including:

A.    Performing asset and other searches;

B.    Document review, analysis of books and records recovered from the

Debtor;

C.    Investigating background facts, analyzing documents evidencing

fraudulent transfers of the Debtor's funds;

D.    Re-negotiating and preparing additional settlement agreement, and

settlement conferences regarding same; and

E.    Preparing and filing settlement motion.

27539095v.1

30.    During the preparation of this Application, Seyfarth discovered that it inadvertently excluded twenty-two (22) time entries for the period August 11, 2011 through March 30, 2012 from its first interim fee application.  Seyfarth has included the omitted time entries in this Application.

31.    A breakdown of the professionals providing services in this category is as follows:

| PROFESSIONAL | TITLE | HOURLY RATES | TOTAL HOURS | VALUE |
|---|---|---|---|---|
| Gus A. Paloian | Partner | 2011 $575.00<br>2012 $600.00<br>2015 $685.00<br>2016 $695.00 | 17.80 | $11,000.50 |
| Bret M. Harper | Associate | 2016 $355.00 | 13.60 | $4,828.00 |
| Jennifer M. McManus | Paralegal | 2016 $315.00 | 1.70 | $535.50 |
| Alice Shepro | Former Case Assistant | 2011 $85.00 | 6.30 | $535.50 |
| **TOTAL:** | | | **39.40** | **$16,899.50** |

**FEE APPLICATIONS (28.50 HOURS VALUED AT $7,952.50)**

32.    During the Application Period, Seyfarth expended 28.50 hours, worth a value of $7,952.50 in preparing Seyfarth's First Interim Fee Application, Seyfarth's Second and Final Fee Application and the Trustee's First and Final Fee Application, collectively (the "Fee Applications").  Based upon the total fees requested to prepare the Fee Applications, the value of time recorded represents approximately 5.3%.

33.    The value of time recorded for the preparation of Seyfarth's first fee application represents approximately 4.0% of the total of the application.

9

34.    The value of time recorded for the preparation of Seyfarth's second fee application represents approximately 8.2% of the total of the application.

35.    The value of time recorded for the preparation of the Trustee's fee application represents approximately 6.3% of the total of the application.

36.    A breakdown of the professionals providing services in this category is as follows:

| PROFESSIONAL | TITLE | HOURLY RATES | TOTAL HOURS | VALUE |
|---|---|---|---|---|
| Gus A. Paloian | Partner | 2011 $575.00<br>2012 $600.00<br>2015 $685.00<br>2016 $695.00 | .80 | $556.00 |
| James B. Sowka | Partner | 2013 $405.00 | 1.50 | 607.50 |
| Jennifer M. McManus | Paralegal | 2013 $270.00<br>2016 $315.00 | 21.50 | $6,295.50 |
| Julie Ziegler | Case Assistant | 2016 $105.00 | 4.70 | $493.50 |
| **TOTAL:** | | | **28.50** | **$7,952.50** |

**OTHER PROFESSIONAL FEE APPLICATIONS (2.00 HOURS VALUED AT $378.50)**

37.    During the Application Period, Seyfarth expended 2.00 hours, worth a value of $378.00 in preparing Popowcer's First and Final Fee Application.

38.    A breakdown of the professionals providing services in this category is as follows:

| PROFESSIONAL | TITLE | HOURLY RATES | TOTAL HOURS | VALUE |
|---|---|---|---|---|
| Jennifer M. McManus | Paralegal | 2016 $315.00 | .80 | $252.00 |

10

| PROFESSIONAL | TITLE | HOURLY RATES | TOTAL HOURS | VALUE |
|---|---|---|---|---|
| Julie Ziegler | Case Assistant | 2016 $105.00 | 1.20 | $126.00 |
| **TOTAL:** | | | **2.00** | **$378.00** |

### D.  Incurred Expenses

39.    As set forth in attached **Exhibit 3**, Seyfarth advanced $166.30 in Expenses on behalf of the Estate during the Application Period.

40.    A portion of the Expenses consists of in-house photocopying charges, which Seyfarth has voluntarily reduced to $0.10 per page.

41.    The expenses for which Seyfarth seeks reimbursement are representative and typical of the types of expenses that Seyfarth ordinarily and customarily charges its non-bankruptcy clients.  Such expenses are neither taken into consideration in determining, nor built as "overhead" into, Seyfarth's hourly rates.

42.    Instead, Seyfarth generally adheres to the so-called "user fee" billing system for out-of-pocket expenses—that is, Seyfarth charges expenses to the particular clients who use them, in this instance the Estate at cost.

43.    The following chart summarizes the complete out-of-pocket costs associated with the categories of Seyfarth expenses:

| CATEGORY | EXPENSES INCURRED |
|---|---|
| Copying @ $0.10 cents per page | $144.50 |
| Online PACER research | $21.80 |
| **TOTAL** | **$166.30** |

11

## V.  **RELIEF REQUESTED**

44.    Seyfarth respectfully requests that the Court: (a) allow and award it on an Second
and Final basis (i) the Fees, consisting of $40,144.50 for legal services rendered to the Trustee,
and (ii) the Expenses, in the amount of $166.30, incurred in connection with such services
(collectively, the "Requested Fees and Expenses"); and (b) authorize the Trustee to make
prompt payment of the Requested Fees and Expenses to Seyfarth from the Estate.

45.    A proposed order providing for the requested relief is attached hereto for the
Court's consideration.

## VI.  **BASIS FOR THE REQUESTED RELIEF**

### A.  **Compensation Standards**

46.    Pursuant to section 331 of the Bankruptcy Code, a professional person employed
under section 327 may generally apply for Second and Final compensation from a bankruptcy
court.  See 11 U.S.C. § 331.  Under Section 330(a)(1)(A), the Court may then award the
professional person "reasonable compensation for actual, necessary services rendered[.]" 11
U.S.C. § 330(a)(1)(A).

47.    In determining the "extent and value of compensation," this Court has endorsed
and applied the "'lodestar' approach—multiplying the number of actual and necessary hours
reasonably expended by a reasonable hourly rate[.]"  In re Wildman, 72 B.R. 700, 712 (Bankr.
N.D. Ill. 1987) (Schmetterer, J.); accord In re UNR Indus., Inc., 986 F.2d 207, 210-11 (7th Cir.
1993) (lodestar approach provides fair compensation under section 330); see also City of
Burlington v. Dague, 505 U.S. 557, 562, 112 S. Ct. 2638, 2641, 120 L. Ed. 2d 449 (1992)
("The 'lodestar' figure has, as its name suggests, become the guiding light of our fee-shifting
jurisprudence.  We have established a 'strong presumption' that the lodestar represents the
'reasonable' fee[.]").

12

48.    To arrive at an attorney's reasonable hourly rate, the Seventh Circuit has "emphasize[d] that section 330 . . . *requires* lawyers in bankruptcy matters to receive the same compensation as they would earn in performing similar services outside the context of bankruptcy."[1]  In re UNR Indus., Inc., 986 F.2d at 210 (emphasis added).  The statutory aim is twofold: (a) "that attorneys be reasonably compensated," and (b) "that future attorneys not be deterred from taking bankruptcy cases due to a failure to pay adequate compensation."  Id.; see also In re Farley, Inc., 156 B.R. at 210 ("The purpose of § 330 was to encourage bankruptcy practitioners not to leave the field in favor of more lucrative areas of the law.") (citing legislative history to Section 330).

49.    As a cornerstone of this market rate approach, the Seventh Circuit has repeatedly "stressed that the best measure of the cost of an attorney's time is what that attorney could earn from paying clients"—that is, the attorney's "standard hourly rate."  Gusman v. Unisys Corp., 986 F.2d 1146, 1150 (7th Cir. 1993); accord Small v. Richard Wolf Med. Instruments Corp., 264 F.3d 702, 707 (7th Cir. 2001) ("The attorney is entitled to his market rate and not some 'medieval just price' determined by the court.") (quoting Steinlauf v. Continental Ill. Corp. (In re Continental Ill. Sec. Litig.), 962 F.2d 566, 568 (7th Cir. 1992)).

50.    Therefore, the Seventh Circuit has mandated that an "attorney's actual billing rate . . . is considered to be the presumptive market rate."  Small, 264 F.3d at 707.  Moreover, "[t]he lawyer's regular rate is *strongly presumed* to be the market rate for his or her services." Moriarty v. Svec, 233 F.3d 955, 965 (7th Cir. 2000) (emphasis added), cert. denied, 532 U.S. 1066, 121 S. Ct. 2216, 150 L. Ed. 2d 209 (2001); see also Central States, S.E. & S.W. Areas Pension Fund v. Central Cartage Co., 76 F.3d 114, 116 (7th Cir.) ("[A] lawyer's regular hourly

---

[1] "In section 330 and its legislative history Congress expressed its intent that compensation in bankruptcy matters be commensurate with the fees awarded for comparable services in non-bankruptcy cases."  In re UNR Indus., Inc., 986 F.2d at 208-09; see In re Farley, Inc., 156 B.R. 203, 210 (Bankr. N.D. Ill. 1993) (Schmetterer, J.) (quoting same).

fee, one counsel would charge 'to the meanest villain', *is* the market rate for that lawyer's

services.") (emphasis added and quoting <u>Barrow v. Falck</u>, 977 F.2d 1100, 1106 (7th Cir.

1992)), <u>cert. denied sub nom.</u> <u>Mason & Dixon Lines v. Central States, S.E. & S.W. Areas</u>

<u>Pension Fund</u>, 519 U.S. 811, 117 S. Ct. 56, 136 L. Ed. 2d 19 (1996).

     51.    Under this principle, "lawyers who fetch above-average rates are presumptively

entitled to them, rather than to some rate devised by the court." <u>Gusman</u>, 986 F.2d at 1150;

<u>accord</u> <u>In re Spanjer Bros., Inc.</u>, 191 B.R. 738, 755 (Bankr. N.D. Ill. 1996) (Squires, J.)

("Generally, so long as the rates being charged are the applicant's normal rates charged in

bankruptcy and non-bankruptcy matters alike, they will be afforded a presumption of

reasonableness.").

     52.    "Only if an attorney is unable to provide evidence of her actual billing rates

should a [ ] court look to other evidence, including 'rates similar experienced attorneys in the

community charge paying clients for similar work.'" <u>Mathur v. Board of Trs. of S. Ill. Univ.</u>,

317 F.3d 738, 743 (7th Cir. 2003) (quoting <u>Spegon v. Catholic Bishop of Chicago</u>, 175 F.3d

544, 555 (7th Cir. 1999)); <u>see also</u> <u>Gusman</u>, 986 F.2d at 1151 ("the ability to identify a

different average rate in the community" is an impermissible reason to depart from an

attorney's billing rate).

     53.    Accordingly, because Seyfarth bills the vast majority of its time at a set rate for

paying clients and spends only a very small percentage of time on cases covered by fee-shifting

statutes, "there is a strong presumption that such counsel could have billed out remaining time

at the rate normally charged." <u>In r</u>*e* <u>Farley, Inc.</u>, 156 B.R. at 211.

     54.    Additionally, under generally accepted standards, if the services of an attorney

employed under section 327 are reasonably likely to benefit a debtor's estate, they should be

compensable. <u>See</u> <u>Andrews & Kurth L.L.P. v. Family Snacks, Inc.</u> (<u>In re Pro-Snax</u>

<u>Distributors, Inc.</u>),157 F.3d 414, 421 (5th Cir. 1998); <u>In re Ames Dep't Stores, Inc.</u>, 76 F.3d 66,

14

71 (2d Cir. 1996); 2 Lawrence P. King, <u>Collier on Bankruptcy</u> ¶ 330.04 at 330-43 (15th ed. rev. 1999); <u>cf.</u> 11 U.S.C. § 330(a)(4)(A)(ii)(I). In this same context, "[n]ecessary services are those that aid the professional's client in fulfilling its duties under the Code." <u>In re Ben Franklin Retail Store, Inc.</u>, 227 B.R. 268, 270 (Bankr. N.D. Ill. 1998) (Barliant, J.).

55.    Thus, the determination of benefit to the Estate is not constrained to a dollar-for-dollar measurement, such that each dollar's worth of legal services must bring a cash dollar into the Estate in order to justify equivalent compensation to counsel. <u>See</u> <u>In re Lifschultz Fast Freight, Inc.</u>, 140 B.R. 482, 488 (Bankr. N.D. Ill. 1992) (Barliant, J.) ("Necessary services have always included services that aid in the administration of the case and help the client fulfill duties under bankruptcy law, whether or not those services result in a monetary benefit to the estate."); <u>accord</u> <u>In re Rite Way Reproductions, Inc.</u>, 1998 Bankr. LEXIS 1080, at *6-*7 (Bankr. N.D. Ill. Aug. 27, 1998) (Squires, J.) (concurring and further observing that "factors other than the economic impact on the estate of actions taken should be considered in the 'benefit to the estate' analysis"); <u>In re Caribou P'ship III</u>, 152 B.R. 733, 742 (Bankr. N.D. Ind. 1993) (same); <u>see, e.g.</u>, <u>Ben Franklin Retail Store, Inc.</u>, 227 B.R. at 270 ("[A] trustee (or Second and Final trustee) performs necessary services when he carries out the duties set forth in § 704 of the Code."); <u>JMP-Newcor Int'l, Inc. v. Seyfarth, Shaw, Fairweather & Geraldson (In re JMP-Newcor Int'l, Inc.)</u>, 1998 U.S. Dist. LEXIS 987, at *13 (N.D. Ill. Jan. 23, 1998) (affirming bankruptcy court's award of fees to firm for advising committee in reasonable way and in good faith despite lack of direct monetary benefit to debtor and estate).

56.    Instead, other factors, such as "whether the services rendered promoted the bankruptcy process or administration of the estate in accordance with the practice and procedures provided under the Bankruptcy Code and Rules for the orderly and prompt disposition of bankruptcy case and related adversary proceedings," also support awards of compensation. <u>In re Spanjer Bros., Inc.</u>, 191 B.R. at 748.

15

57.   As previously stated, the legal services for which Seyfarth requests allowance and payment of compensation relate to the Application Period, and were rendered in connection with the Case and in the discharge of Seyfarth's professional responsibilities as counsel to the Trustee during that time.

58.   Seyfarth respectfully submits that such legal services have, in all respects, been reasonable, necessary, and beneficial to the Estate.  In this connection, these services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the matters which they concerned.

59.   Further, they promoted the bankruptcy process and the administration of the Estate and supported the Trustee in fulfilling his statutory duties, all in accordance with the Bankruptcy Code and Bankruptcy Rules.

60.   For purposes of this Application, Seyfarth has computed the Fees on the basis of its discounted hourly rates applicable to the performance of bankruptcy legal services unrelated to the Case at the time that such services were rendered.

61.   Seyfarth's average hourly billing rate for its attorneys—that is, its "lodestar" rate—during the Application Period was $511.22.

62.   During the Application Period, Seyfarth's discounted hourly billing rates for professionals providing services in the Case ranged from: (a) $330.00 to $695.00 for attorneys, and (b) $85.00 to $315.00 for paralegals or para-professionals.  Based upon all of the foregoing, Seyfarth respectfully submits that the fair and reasonable value of the legal services that it rendered during the Application Period is $39,644.50.

63.   In all these respects, the compensation which Seyfarth has requested herein is reasonable based upon the customary compensation charged by comparably-skilled practitioners in either non-bankruptcy or bankruptcy cases.

27539095v.1

64.     Moreover, the requested compensation is less than the fees which Seyfarth would have received for providing legal services to its non-bankruptcy clients, and thus represents even less than its lost opportunity costs for such non-bankruptcy services because Seyfarth's acceptance of employment by the Trustee in the Case precluded such employment.

65.     In rendering legal services to the Trustee, and in making this Application, Seyfarth respectfully submits that it has exercised its good faith billing judgment and has not sought compensation for "excessive, redundant, or otherwise unnecessary" time.  Hensley v. Eckerhart, 461 U.S. 424, 434, 103 S. Ct. 1933, 1939-40, 76 L. Ed. 2d 40 (1983).

66.     Finally, and with respect to new considerations added to the Bankruptcy Code under BAPCPA—that is, the new "relevant factor" of whether a professional "is board certified or otherwise has demonstrated skill and experience in the bankruptcy field,"  11 U.S.C. § 330(a)(3)(E)—Seyfarth previously attached its Attorney Biographical Information in its First Fee Application [see Dkt. No. 32 at Exhibit 1].  The Attorney Biographical Information sets forth the qualifications of the Seyfarth attorneys listed herein, including their demonstrated skill and experience in the bankruptcy field, both in the local Chicago market and in representation of clients in matters nationwide.

**B.  Expense Reimbursement Standards**

67.     With respect to reimbursing expenses, the Court may award a professional person "reimbursement for actual, necessary expenses."  11 U.S.C. § 330(a)(1)(B).

68.     "An expense is necessary if it was incurred because it was required to accomplish the proper representation of the client."  In re Spanjer Bros., Inc., 191 B.R. at 749; accord In re Wildman, 72 B.R. at 731.

69.     In that regard, Seyfarth is requesting reimbursement only for actual and necessary expenses incurred on the Trustee's behalf.  Seyfarth respectfully submits that it incurred these expenses because they were required to accomplish the proper representation of the Trustee

17

and the advancement of the Estate's interests in the Case.  As set forth above, Seyfarth

voluntarily reduced and limited its costs for photocopy expenses.

70.    Seyfarth submits that the Expenses are reimbursable and do not constitute

"overhead" which the Court discussed and described, as follows:

> Expenses which are overhead are not compensable because they are not built into
> the normal hourly rate charged by the billing professional.  Convent Guardian,
> 103 Bankr. at 939; Wildman, 72 Bankr. at 731.  Overhead expenses include "all
> continuous administrative or general costs or expenses incident to the operation of
> the firm which cannot be attributed to a particular client or cost."  In re Thacker,
> 48 Bankr. 161, 164 (Bankr. N.D. Ill. 1985) (quoting Jensen-Farley Pictures, 47
> Bankr. at 584).[2]

71.    In contrast, Seyfarth charges for its out-of-pocket expenses only, including the

incurred Expenses, to the particular clients who use them—in this instance, the Estate.  As

previously discussed, the incurred Expenses included herein are neither taken into

consideration in determining, nor built as "overhead" into, Seyfarth's hourly rates.

72.    Finally, in seeking reimbursement for such costs, the Seventh Circuit has

established guidelines and cautioned that an applicant "[is] not required to submit a bill of costs

containing a description so detailed as to make it impossible economically to recover [ ] costs[,

but] [r]ather [  ] [is] required to provide the best breakdown obtainable from retained records."

Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble Co., 924 F.2d 633, 643 (7th Cir.

1991).

73.    In seeking reimbursement for the Expenses herein, Seyfarth has made every

attempt to fully comply with these dictates.

---

[2] In re GSB Liquidating Corp., 1995 Bankr. LEXIS 1245, at *41 (Bankr. N.D. Ill. Aug. 21, 1995) (Squires, J.); see
In re Adventist Living Ctrs., Inc., 137 B.R. 701, 719 (Bankr. N.D. Ill. 1991) (Sonderby, J.) ("Expenses which are
overhead and which are included in the hourly rate are not compensable."); see also 2 Lawrence P. King, Collier on
Bankruptcy ¶ 330.05 at 3-330 (15th ed. rev. LEXIS 2006) ("Nonreimbursable overhead has been defined as regular
administrative and general expenses incident to the operation of a business that cannot be attributed to a particular
client or cost."); Stroock & Stroock & Lavan v. Hillsborough Holdings Corp. (In re Hillsborough Holdings Corp.),
127 F.3d 1398, 1402 (11th Cir. 1997) ("We accept that true 'overhead' costs—the ordinary operating costs of a firm,
*such as rent, heat, and the like,* that cannot be attributed to a particular case—are not separately compensable
as reimbursable expenses.") (emphasis added).

27539095v.1

## VIII.  NO PRIOR REQUEST

74.  No prior request for the relief requested in this Application has been made to this Court or to any other court.

## IX.  CONCLUSION

For all the foregoing reasons, Seyfarth Shaw LLP respectfully requests that the Court enter an Order in substantially the same form as attached hereto:

A.  Finding Notice of the Application sufficient as given and that no other or further notice is necessary;

B.  Allowing and awarding Seyfarth on an Second and Final basis the Requested Fees and Expenses;

C.  Authorizing the Trustee to make payment of such Fees and Expenses to Seyfarth from the Estate, and

D.  Granting such other and further relief as this Court deems just and proper.

Dated:  October 31, 2016

Respectfully submitted,

GUS A. PALOIAN, not individually or personally, but solely in his capacity as the Chapter 7 Trustee of the Debtor's Estate

By:/s/ Bret M. Harper
    Gus A. Paloian (06188186)
    Bret M. Harper (6299968)
    SEYFARTH SHAW LLP
    131 South Dearborn Street, Suite 2400
    Chicago, Illinois 60603
    Telephone:  (312) 460-5000
    Facsimile:  (312) 460-7000

    *Counsel to Chapter 7 Trustee,*
    *Gus A. Paloian*